## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **VICKIE GILMORE AND LA'VONTE FLOWERS, INDIVIDUALLY AND AS CO-PERSONAL REPRESENTATIVES OF THE WRONGFUL DEATH ESTATE OF NAHJE FLOWERS, DECEASED,** | |
| **PLAINTIFFS,** | |
| **V.** | **CASE NO. 1:20-CV-00853-JB-LF** |
| **BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, A BODY CORPORATE OF THE STATE OF NEW MEXICO, FOR ITSELF AND ITS PUBLIC OPERATIONS, ROBERT DAVIE, IN HIS INDIVIDUAL CAPACITY, AND NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,** | |
| **DEFENDANTS,** | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO ROBERT DAVIE'S MOTIONS TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES.......................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................1

PROCEDURAL BACKGROUND ...................................................................................1

ARGUMENT AND AUTHORITIES ...............................................................................2

    I.      LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6). ..........................................2

    II.     QUALIFIED IMMUNITY DOES NOT APPLY TO DEFENDANT DAVIE. .............3

    III.   PLAINTIFFS PLAUSIBLY PLEAD THEIR TITLE VI CLAIM (COUNT IV) AGAINST DEFENDANT DAVIE. ................................................................................5

    IV.   PLAINTIFFS PLAUSIBLY PLEAD THEIR STATE LAW CLAIMS AGAINST DEFENDANT DAVIE (COUNTS V-IX). ......................................................................7

          A.     Plaintiffs Plausibly Plead New Mexico's Tort Claim Act Exception. ...................7

          B.     Plaintiffs' Plausibly Plead Claim for Loss of Consortium. ................................12

          C.     Plaintiffs Plausibly Plead Davie Proximately Caused Flowers' Death. ...............13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ....................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................2

*Baker v. Bd. of Regents of State of Kan.*,
    991 F.2d 628 (10th Cir. 1993) ....................................................................6

*Bartlett v. N.M. Welding Supply, Inc.*,
    1982–NMCA–048 ......................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................2

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
    757 F.3d 1125 (10th Cir. 2014) ..................................................................3

*Brosseau* v. *Haugen*,
    543 U. S. 194 (2004) ..................................................................................3

*Buhendwa v. Univ. of Colo. at Boulder*,
    214 Fed. Appx. 823 (10th Cir. 2007) .........................................................5

*City of Belen v. Harrell*,
    1979-NMSC-081………………………………………………………...13

*Cunningham v. New Mexico*,
    No. CV 13-0142 JP/WPL, 2013 WL 12328819  (D.N.M. Dec. 4, 2013) ...........2

*Encinias v. Whitener Law Firm, P.A.*,
    2013-NMSC-045 ........................................................................................8

*Espinoza v. Town of Taos*, 1
    120 N.M. 680, 905 P.2d 718 (1995)...........................................................8

*Green v. Padilla*,
    2020 WL 5350175 (D.N.M. Sept. 4, 2020)..............................................8, 9

*Herrera v. Quality Pontiac*,
    2003-NMSC-018………………………………………………………...13

iii

*Johnson ex rel. Estate of Cano v. Holmes,*
   455 F.3d 1133 (10th Cir. 2006) ........................................................................8

*Johnstone v. City of Albuquerque*
   2006-NMCA-119.................................................................................................14

*Keller v. Arrieta,*
   No. CV 20-259 KG/SCY, 2021 WL 149069 (D.N.M. Jan. 15, 2021) ...............2

*Leithead v. City of Santa Fe,*
   1997-NMCA-041..................................................................................................9

*Mullenix v. Luna,*
   577 U.S. 7 (2015) ............................................................................................3, 4

*Nez v. United States,*
   367 F. Supp. 3d 1245 (D.N.M. 2019)................................................................12

*Ombe v. Martinez,*
   No. 14-CV-00763 RB/KBM, 2015 WL 13855233 (D.N.M. Sept. 3, 2015) .......6

*Ortiz v. N.M. State Police,*
   112 N.M. 249  (NM App. 1991)........................................................................11

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ...........................................................................................3

*Peters v. Molloy Coll. of Rockville Ctr.,*
   No. 07-CV-2553 DRH ETB, 2008 WL 2704920 (E.D.N.Y. July 8, 2008) .......7

*Quarrie v. New Mexico Inst. of Mining & Tech.,*
   No. 13-CV-0349 MV/SMV, 2014 WL 11456597 (D.N.M. Feb. 25, 2014)........5

*Quevado v. New Mexico Children Youth, and Families Department,*
   2016-NMCA-101...................................................................................................8

*Rimbert v. Eli Lilly and Co.,*
   577 F. Supp.2d 1174 (D.N.M. 2008)……………………………………………14

*Roybal-Mack v. New Mexico Dep't of Pub. Safety,*
   2017 WL 3025921 (D.N.M. July 11, 2017) ...............................................11, 12

*Santillo v. NM Dept of Public Safety,*
   143 NM 84 (NM App. 2007)..............................................................................11

*Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS,*

2016-NMSC-009…………………………………………………………………...13

*Scott v. Rizzo,*
    96 N.M. 682, 690, 634 P.2d 1234, 1242 (N.M.S.C. 1981)………………………………13

*Silva v. Lovelace Health Sys., Inc.,*
    2014-NMCA-086…………………………………………………………………12, 14

*Swearingen v. Honeywell, Inc.,*
    189 F.Supp. 2d 1189 (D. Kan. 2002)……………………………………………………2

*Taylor v. Riojas,*
    141 S. Ct. 52, 208 L. Ed. 2d 164 (2020)…………………………………………4, 5

*Torres v. El Paso Elec. Co.,*
    1999–NMSC–029…………………………………………………………………...13

*United States v. Stinson,*
    386 F.Supp. 2d 1207 (W.D. Okla. 2005)……………………………………………2

*Upton v. Clovis Mun. Sch. Dist.,*
    2006-NMSC-040 …………………………………………………………8, 10, 11

*Wachocki v. Bernalillo Cnty. Sherif's Dep't,*
    2011–NMSC–039…………………………………………………………………12

*Wells v. Valencia County,*
    1982-NMSC-048 ……………………………………………………………………7

*Zia Agric. Consulting, LLC v. Tyson Foods, Inc.,*
    No. 1:20-CV-445-KWR-JHR, 2021 WL 245686 (D.N.M. Jan. 25, 2021) ……………3

*Ziglar v. Abbasi,*
    127 S.Ct. 1843 (2017)………………………………………………………………3

**Statutes**

41-3A-1 N.M.S.A. 1978 ……………………………………………………………13

41-4-2 N.M.S.A. 1978 ………………………………………………………………8

42 U.S.C. § 1983…………………………………………………………………………7

Fed. R. Civ. P. 12(b)……………………………………………………………………2

Fed. R. Civ. P. 12(b)(6) ………………………………………………………………2

N.M. Stat. Ann. § 41-4-6 ..................................................................................................8, 10, 12

**Other Authorities**

Restatement (Second) of Torts § 455 (1995)..................................................................................14

**TO THE HONORABLE JUDGE OF THE DISTRICT COURT OF NEW MEXICO:**

COME NOW Plaintiffs, Vickie Gilmore and La'Vonte Flowers, Individually and as Co-Representatives of the Wrongful Death Estate of Nahje Flowers, Deceased (collectively, "Plaintiffs"), and file this their *Response in Oppositions to Defendant Robert Davie's Motions to Dismiss and Memorandum in Support* ("Response"), and in support thereof, respectfully show this Court as follows:

## PRELIMINARY STATEMENT

Nahje Flowers was a hard-working, athletic and dedicated football player who played for the Lobos football team at the University of New Mexico ("UNM").[1] During this time, Defendant Robert Davie ("Davie") was the head coach for the Lobos team.[2] On November 5, 2019, Nahje Flowers ("Decedent") took his own life after battling with depression and suicidal thoughts from the serious brain injuries he sustained as a direct result playing football for UNM and the National Collegiate Athletic Association ("NCAA").[3] The University is governed and controlled by the Board of Regents of the University of New Mexico ("Regents").[4]

## PROCEDURAL BACKGROUND

On August 25, 2020, Plaintiffs filed their original complaint against Defendants Davie, the Regents, and the NCAA, alleging violations of Constitutional rights and asserting related state-law claims against all Defendants. Plaintiffs properly amended their complaint on September 17, 2020 ("First Amended Complaint"), and amended once again on October 16, 2020 ("Second Amended Complaint") (hereinafter referred to as the "SAC"). Plaintiffs' SAC is the operative Complaint for Plaintiffs' causes of action against all Defendants.

---

[1] SAC ¶¶ 117-121.
[2] SAC ¶ 5, 6.
[3] SAC ¶¶ 122-127.
[4] SAC ¶¶ 2-4.

On December 3, 2020, the parties entered into an agreed-to briefing schedule in this case, giving Defendants until December 11, 2020 to answer or otherwise respond to Plaintiffs' SAC. On December 11, 2020, Defendant Davie filed his original motion to dismiss, along with his original answer; however, seven days later—on December 18, 2020—Defendant Davie filed a second motion to dismiss, despite the fact that the agreed-upon deadline had already passed.[5] In the event the Court decides to consider Defendant Davie's untimely motion to dismiss, Plaintiffs have briefed arguments in opposition to the Second Motion to Dismiss below.

## ARGUMENT AND AUTHORITIES

### I. LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6).

To survive Defendant Davie's Rule 12(B)(6) motions to dismiss ("Motion to Dismiss"), Plaintiffs' complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Plaintiffs' factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "All well-pleaded factual allegations are 'viewed in the light most favorable to the nonmoving party.'" *Zia Agric. Consulting, LLC v. Tyson Foods, Inc.*, No. 1:20-CV-445-KWR-JHR, 2021 WL 245686, at *3 (D.N.M. Jan. 25, 2021) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

---

[5] Plaintiffs hereby object to Defendant Davie's Second Motion to Dismiss on timeliness grounds. *Cunningham v. New Mexico*, No. CV 13-0142 JP/WPL, 2013 WL 12328819, at *2 (D.N.M. Dec. 4, 2013); *Keller v. Arrieta*, No. CV 20-259 KG/SCY, 2021 WL 149069, at *3 (D.N.M. Jan. 15, 2021) ("Ordinarily, 'it is impermissible under the Federal Rules to submit an answer and thereafter file a Rule 12(b)(6) motion to dismiss.' *Swearingen v. Honeywell, Inc.*, 189 F.Supp. 2d 1189, 1193 (D. Kan. 2002) (citing Fed. R. Civ. P. 12(b)); *see also United States v. Stinson*, 386 F.Supp. 2d 1207, 1211 (W.D. Okla. 2005) finding motion to dismiss under Rule 12(b)(6) 'untimely' when defendant already filed an answer)").

Here, Plaintiffs plead plausible claims against Defendant Davie.[6]  Even if the Court finds at this stage that Plaintiffs could have been more specific about the facts pertaining to this Defendant, the Court can still deny the motion to dismiss because Plaintiffs provide sufficient facts describing Davie's injurious conduct, foreclosing dismissal. *Zia Agric. Consulting*, 2021 WL 245686, at *5 ("Thus, to the extent the complaint is somewhat lacking in individual specificity, it is not enough to grant Defendants' motion on that basis.").

## II.    QUALIFIED IMMUNITY DOES NOT APPLY TO DEFENDANT DAVIE.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *See, e.g., Brosseau* v. *Haugen*, 543 U. S. 194, 198 (2004) (*per curiam*); *Ziglar v. Abbasi*, 127 S.Ct. 1843, 1866 (2017) ("The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *Mullenix v. Luna*, 577 U.S. 7 (2015) ("[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate **clearly established** statutory or constitutional rights of which a reasonable person would have known.'") (emphasis added) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Whether a right is "clearly established" at the time of the alleged violation depends on whether the violative nature of *particular* conduct is clearly established. *Mullenix v. Luna*, 577 U.S. 7, 12 ("This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'") (internal citations omitted) (emphasis added). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional

---

[6] SAC (Counts I-IX).

question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, the Fourteenth Amendment rights at issue—those secured by the equal protection and due process clauses of the Fourteenth Amendment—are "clearly established" and thus, are undoubtedly rights for which Defendant Davie would have had "fair notice" of at the time of the alleged violations. However, it is also true that qualified immunity is not extended to protect the "plainly incompetent," or where the individual (such as Defendant Davie) knowingly violates the law.[7] *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'") (internal citations omitted); *see also Taylor v. Riojas*, 141 S.Ct. 52, 54 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution").

In *Taylor v. Riojas*, the U.S. Supreme Court reversed a decision from the Fifth Circuit's decision granting qualified immunity to officers who were responsible for a prisoner's confinement in cells "teeming with human waste" for six days. *Taylor v. Riojas*, 141 S. Ct. 52, 208 L. Ed. 2d 164 (2020). The Fifth Circuit extended qualified immunity to the officers responsible for the prisoner's housing and confinement, on the basis that the officers did not have "fair notice" that their specific acts were unconstitutional. *Id*. The United States Supreme Court held that the Fifth Circuit erred in extending qualified immunity, as any reasonable should have known that the conditions "offended the Constitution." *Id*. Specifically, the Court held:

> But no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time . . . See Hope, 536 U.S., at 745 (holding that "[t]he obvious cruelty inherent" in putting

---

[7] SAC ¶¶ 122-137, 139-143.

inmates in certain wantonly "degrading and dangerous" situations provides officers "with some notice that their alleged conduct violate[s the Constitution].

*Taylor v. Riojas*, 141 S. Ct. 52, 208 L. Ed. 2d 164 (2020).  Similarly, Defendant Davie subjected Nahje Flowers to "degrading and dangerous" conditions that were sufficient to put a reasonable person in his position on notice that his conduct violated the Plaintiffs' Fourteenth Amendment constitutional rights.  Accordingly, qualified immunity does not apply to Defendant Davie's conduct and this Court must deny Defendant Davie's motions to dismiss on qualified immunity grounds.

## III.   PLAINTIFFS PLAUSIBLY PLEAD THEIR TITLE VI CLAIM (COUNT IV) AGAINST DEFENDANT DAVIE.

To state a claim under Title VI, one must allege (1) that there is a racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance. *Quarrie v. New Mexico Inst. of Mining & Tech.*, No. 13-CV-0349 MV/SMV, 2014 WL 11456597, at *2 (D.N.M. Feb. 25, 2014), report and recommendation adopted, No. 13-CV-0349 MV/SMV, 2014 WL 11456599 (D.N.M. Apr. 3, 2014) (finding the pro se plaintiff sufficiently stated a Title VI claim). To establish a prima facie case for a Title VI violation, one must demonstrate "(1) that he or she is a member of a protected class; (2) that her or she was disciplined; and (3) that similarly situated comparators were treated differently for the same or similar conduct." *Id.* (quoting *Buhendwa v. Univ. of Colo. at Boulder*, 214 Fed. Appx. 823, 828 (10th Cir. 2007) (unpublished). Plaintiffs need not establish a prima facie case in order to survive a motion to dismiss; they merely need to allege sufficient factual detail to state a plausible claim of racial discrimination. *Id*. at *3.  Here, Plaintiffs' SAC does just that.

Specifically, Plaintiffs' SAC alleges Nahje Flowers was an African-America student at UNM; he sustained serious injuries as a result of playing collegiate-level football for UNM's

football team; and that on the basis of his race, Nahje Flowers was treated differently than his white counterparts for injuries sustained in the sport. These facts alone constitute sufficient allegations to support two of the three required elements.

In Defendant Davie's First Motion to Dismiss, he solely challenges Plaintiffs' Title VI claims asserted,[8] arguing he is entitled to dismissal of these claims because he is not an entity that receives federal funding. *Id.* at 2. Defendant Davie's reliance on *Baker v. Bd. of Regents of State of Kan.* is misplaced at best. 991 F.2d 628, 632 (10th Cir. 1993). There, the Tenth Circuit applied Kansas' two-year statute of limitations on a motion for summary judgment—which requires a different analysis than the one applied at the motion to dismiss stage. 991 F.2d 628, 632 (10th Cir. 1993) ("Because all of the appellant's federal claims are best characterized as claims for personal injuries, we affirm the trial court's finding that Kansas' two-year limitations period for personal injury actions, Kan. Stat. Ann. § 60–512, applies to all of the appellant's federal claims.").

Defendant Davie also mistakenly relies on *Ombe v. Martinez*, which involved a *pro se* plaintiff who did not file a response to the defendant's motion to dismiss. *See Ombe v. Martinez*, No. 14-CV-00763 RB/KBM, 2015 WL 13855233, at *3 (D.N.M. Sept. 3, 2015). In *Ombe*, this Court relied on precedent outside this Circuit, holding that the *pro se* plaintiff could not sue the individually-named defendants. *Id.* at 6. The present case differs from *Ombe* in that Plaintiffs have plausibly pled intentional discrimination on the part of Defendant Davie, in his individual capacity as well as his official capacity as head football coach for the UNM Lobos, *i.e.,* as an agent and employee of the university.[9]

Although Plaintiffs are aware of some precedent generally holding that individual defendants are not subject to liability under Title VI; other courts have determined that it is unclear

---

[8] Doc. 36
[9] SAC ¶¶ 122-137, 139-143.

whether individuals may be subject to liability under Title VI in their official capacities. *Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 DRH ETB, 2008 WL 2704920, at *8 (E.D.N.Y. July 8, 2008).  The *Peters* Court compared several cases dismissing Title VI claims that alleged wrongful conduct committed by individuals who received federal funds because of their individual capacity allegations. *Id.* However, the court in *Peters* declined "to dismiss Plaintiff's Title VI claims against the individual defendants in their official capacities." *Id.*

If the Court finds that Plaintiffs have not sufficiently alleged that Defendant Davie committed Title VI violations in his official capacity as the head coach for the UNM Lobos football team, Plaintiffs respectfully request leave to amend their complaint to cure any deficiencies the Court finds in their pleading with respect to the Title VI allegations made against Robert Davie.

## IV.   PLAINTIFFS PLAUSIBLY PLEAD THEIR STATE LAW CLAIMS AGAINST DEFENDANT DAVIE (COUNTS V-IX).

### A.   Plaintiffs Plausibly Plead New Mexico's Tort Claim Act Exception.

As recognized by New Mexico Courts, the Tort Claims Act "does not prohibit a plaintiff from bringing an action for damages where the plaintiff also pursues, by reason of the same occurrence, an action against the same government under 42 U.S.C. § 1983. *Wells v. Valencia County*, 1982-NMSC-048, ¶ 16. Further, the court recognized that while a § 1983 constitutional deprivation claim arises out of tortious conduct, "the two are distinct concepts compensable under different laws." *Id*. 1982-NMSC-048, ¶ 7.

Here, Plaintiffs plead federal constitutional deprivation claims and state law claims against Defendant Davie. Based on well recognized New Mexico law, Plaintiffs are able to bring and properly pled both federal and state claims against Defendant. Further, Plaintiffs' federal constitutional deprivation claims are not capped or limited by any statutory caps limiting the amount of damages sought under Plaintiffs' state tort act claims.

The New Mexico Tort Claims Act ("NMTCA") provides for various exceptions to the traditional notions of sovereign immunity for governmental entities and public employees. § 41-4-2 N.M.S.A. 1978. Under the NMTCA, it was declared by the Legislature "to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act." *Green v. Padilla*, 2020 WL 5350175, at *26 (D.N.M. Sept. 4, 2020)(quoting § 41-4-2(A)).

One of the Act's exceptions is the "building waiver," which "the Supreme Court of New Mexico has adopted a broad interpretation of what constitutes a 'building, public park, machinery, equipment, or furnishings'." *Green* 2020 WL 5350175, at *27 (quoting N.M. Stat. Ann. § 41-4-6)(See also *Quevado v. New Mexico Children Youth, and Families Department*, 2016-NMCA-101). Further, the Supreme Court of New Mexico has interpreted "§ 41-4-6's phrase 'operation and maintenance' somewhat broadly. *Id.* (See N.M. Stat. Ann. § 41-4-6. "[Operation and maintenance] is not 'limited [in] its applicability strictly to defects in the physical building.' " *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1139 (10th Cir. 2006)(quoting *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040 ¶ 6). Regarding the Act's "building wavier," the Court has held the waiver applies to "more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." *Id.* (citing *Encinias v. Whitener Law Firm, P.A.,* 2013-NMSC-045 ¶ 10 (quoting *Upton*, 2006-NMSC-040 ¶ 9)). In addition, for the building waiver to apply the "the 'negligent operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building." *Upton,* 2006-NMSC-040 ¶ 8 (citing *Espinoza v. Town of Taos,* 120 N.M. 680, 683, 905 P.2d 718, 721 (1995) ("the critical question is whether the condition creates a potential risk to the general public")). For the "building waiver" to apply, New Mexico courts have held that

8

public employees "knew or should have known of the danger posed by the condition." *Green* 2020 WL 5350175, at *31.

Further, while Courts have stated that a claim of negligent supervision by itself is not enough to fall under the Act's "building waiver," a claim that involves elements of negligent supervision can still fall under the waiver if that supervision is directly tied to the operation ... of the building.'" *Green* 2020 WL 5350175, at *27 (quoting *Upton*, 2006-NMSC-040 ¶ 16)(See also *Leithead v. City of Santa Fe*, 1997-NMCA-041 ¶ 5 ("the Court of Appeals of New Mexico determined that the plaintiffs' claim was not merely negligent supervision, but rather negligent operation, creating a dangerous condition with a potential risk for more than just a single individual.")).

In *Upton*, the Supreme Court of New Mexico held that the NMTCA's "building waiver" applied when a municipal school district failed to implement and execute its safety policies which resulted in a student dying of an asthma attack. *Upton*, 2006-NMSC-040 ¶ 14, 25. That case also illustrates the point that "an official is liable for negligence that endangers a class of a building's users even though an official's negligence may result in specific harm or endanger peculiarly a specific person." *Green v. Padilla*, 2020 WL 5350175, at *45 (citing *Upton*, 2006-NMSC-040, ¶¶ 18-21).

In that case, the school district was aware of a student's condition, but nonetheless, her physical education teacher refused to let her stop strenuous activity. *Upton*, 2006-NMSC-040 at ¶¶ 1-5. As a result, the student suffered a severe asthma attack, but school officials failed to administer CPR or follow the district's emergency protocols. *Id.* Shortly after, the student's child died of the asthma attack. The Supreme Court held that the school's negligence fell within the

exception to immunity outlined in § 41-4-6 and allowed the Plaintiffs the opportunity to prove their case to the jury. *Id*. at ¶25.

In this case, Defendant Davie maintained safety policies designed to protect the health and safety of his college football players while utilizing UNM's facilities and specifically, UNM and NCAA safety policies focused on the treatment of football players after sustaining a concussion.[10] Similar to *Upton*, Defendant Davie failed to execute his and UNM's safety policies that resulted in a dangerous condition that threatened the health, safety, and ultimately the life of Nahje Flowers as well as an entire class of users of the Regents' facility—college football players suffering from the effects of a concussion.[11]

However, even though Defendant Davie knew directly of Flowers' concussion and the resulting mental and physical effects it had on him, he failed to act on and execute his and UNM's safety policies specifically designed to protect players in Flowers' situation and condition.[12] Flowers' coaches, including Defendant Davie, and other team personnel were witnesses to his concussion injuries, the subsequent mental health effects on Flowers, and the medical personnel's recommendations that Flowers should not continue playing.[13] Further, Regents' student health center personnel was also aware of the concussion and the fragility of Flowers' mental health, including depression and suicidal ideations.[14] Despite knowing the state of Flower's mental and physical health and the dangers and risks associated of mistreated or untreated concussions, Defendant Davie forced Flowers to continue play and practice football at Regents' facilities.[15] As

---

[10] SAC ¶¶ 87, 120-143, 182-193, 203, 205-208, 211-221.
[11] *Id*.
[12] *Id*.
[13] SAC ¶¶ 120-130.
[14] *Id*.
[15] *Id*.

a result, Nahje Flowers' mental health deteriorated to a state that he was bereft of reason in the actions he took to end his life.[16]

Similar to *Upton* and its progeny of cases, Davie's negligence towards a single student potentially endangered all similar situation student athletes suffering from a concussion.[17] Davie's actions and inactions towards Flowers' medical condition is an example of his indifference that "makes it more likely that all similarly situated students were at risk as well."[18] *Upton*, 2006-NMSC-040 ¶ 24. As a result, Davie maintained a dangerous condition through his failure to implement and execute his, UNM's, and NCAA's safety policies regarding athletes suffering a concussion. *Id.* Thus, Plaintiffs plausibly pled its NMTCA claims against Davie.

In addition, Plaintiffs NMTCA claim involves elements of negligent supervision that still fall under the Act's "building wavier" because the negligent supervision ties directly to the operation of the Regents' building and facilities associated with its college football program and Davie's negligence led to the "commission of one of the torts enumerated in the Tort Claims Act." SAC *Id. Roybal-Mack v. New Mexico Dep't of Pub. Safety*, 2017 WL 3025921, at *7 (D.N.M. July 11, 2017) (citing *Santillo v. NM Dept of Public Safety*, 143 NM 84 (NM App. 2007), *Ortiz v. N.M. State Police*, 112 N.M. 249, 251, (NM App. 1991)). Plaintiffs pled that public employees for Regents, including its head coach Defendant Davie and the student health center personnel, knew directly of Flowers' concussion and the debilitating mental and emotional side effects it had on him.[19] Despite knowledge of Flowers' injuries and condition, Davie forced him to continue to practice and play against medical advice at the facilities.[20]

---

[16] SAC ¶¶ 124-126.
[17] SAC ¶¶ 87, 120-143, 182-193, 203, 205-208, 211-221.
[18] *Id.*
[19] SAC ¶¶ 120-128.
[20] *Id.*

As noted in Davie's Motion, a claim for wrongful death against a governmental entity must fall within a waiver of the NMTCA before it can proceed. *Roybal-Mack v. New Mexico Dep't of Pub. Safety*, 2017 WL 3025921, at *7 (D.N.M. July 11, 2017). In their SAC, Plaintiffs' wrongful death claims were based on Davie's negligence. As Plaintiffs have shown in this Response, Plaintiffs plausibly pled that Davie's negligence fell within the NMTCA's "building waiver" of immunity. Thus, Plaintiffs' wrongful death claim was also plausibly pled because it stems from the same facts and circumstances of Davie's negligence.

 **B.** **Plaintiffs' Plausibly Plead Claim for Loss of Consortium.**

Similarly, Plaintiffs' claim for loss of consortium stems from Davie's negligence that falls within the §41-4-6 waiver of immunity. From the outset, it is Plaintiffs' position that this Response demonstrates why Davie's motion must fail because all Plaintiffs' claims were properly and plausibly pled. Thus, Plaintiffs pled the requisite underlying negligence and wrongful death claims to warrant the additional pleading of Plaintiffs' loss of consortium claim.

"The New Mexico courts have declined to 'foreclose, as a matter of law' the possibility of recovery for different types of relationships other than those already recognized." *Nez v. United States*, 367 F. Supp. 3d 1245, 1272 (D.N.M. 2019)(quoting *Wachocki v. Bernalillo Cnty. Sheriff's Dep't,* 2011–NMSC–039, ¶ 53). "To establish a loss of consortium claim, Plaintiffs were required to demonstrate two elements: (1) that they had a 'sufficiently close relationship' with Decedent, and (2) that Defendants owed them a duty of care." *Silva v. Lovelace Health Sys., Inc.,* 2014-NMCA-086, ¶ 37 (quoting *Wachocki,,* 2011–NMSC–039 ¶ 5).

Plaintiffs also plausibly pled facts to support the loss of consortium claim for the death of their son Nahje Flowers.[21] At the time of his death, Nahje Flowers was unmarried, did not have

---

[21] SAC ¶¶ 1, 124, 222-226, and Ex. A.

any children, and was in college living several hundred miles away from his childhood home in California.[22] While he was a legal adult, Nahje Flowers was still mutually dependent on and had a sufficiently close relationship with his parents.[23]

Further, to the extent that Defendant Davie disagrees with the characterization of the relationship between Nahje Flowers and his parents, Plaintiffs argue that it is a factual dispute to be determined by the fact finders after further discovery. As such, this issue is premature and should be decided by the fact-finders in this case.

**C.** **Plaintiffs Plausibly Plead Davie Proximately Caused Flowers' Death.**

In this case, Plaintiffs plausibly plead Nahje's Flower's death was caused by Defendant Davie's negligence (and that of the other Defendants), and that Nahje Flowers' suicide was not an independent intervening cause. Further, the New Mexico Supreme Court has stated that *"an overly broad use of the doctrine of independent intervening cause to limit liability, as a matter of law, based upon the disproportionate fault of a third party 'is inconsistent with New Mexico's system of pure comparative fault.'" Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 27 (quoting *Torres v. El Paso Elec. Co.,* 1999–NMSC–029, ¶ 15, 127 N.M. 729, 987 P.2d 386) (See also *Scott v. Rizzo,* 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981), *Bartlett v. N.M. Welding Supply, Inc.,* 1982– NMCA–048, ¶ 33, *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶ 20, and § 41-3A-1 N.M.S.A. 1978

New Mexico Courts have also recognized that "it cannot be said that in every case suicide is an independent intervening cause as a matter of law." *City of Belen v. Harrell*, 1979-NMSC-081, ¶ 18, 93 N.M. 601, 604, 603 P.2d 711, 714. Suicide is not an independent intervening cause when either "the actor's tortious conduct induces a mental illness in the decedent from which the

---

[22] *Id.*
[23] *Id.*

death results," or it "results from a special relationship between the decedent and the defendant, that presumes or includes knowledge of the decedent's risk of suicide." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 11, 140 N.M. 596, 601, 145 P.3d 76, 81, <u>as revised</u> (Sept. 25, 2006) (citing Restatement (Second) of Torts § 455 (1995) (see also *Rimbert v. Eli Lilly and Co.*, 577 F. Supp.2d 1174 (D.N.M. 2008)). Further, whether or not the decedent's suicide results in either one of these exceptions that defeat the affirmative defense of independent intervening causation is an issue for the jury to decide. *Silva v. Lovelace Health Sys., Inc.,* 2014-NMCA-086, ¶ 22.

In this case, Plaintiffs plausibly plead that Nahje's Flower's death was caused by Defendants' negligence, and his suicide was not an independent intervening cause. Because Nahje Flowers was college football player and one who suffered concussions playing football, a special relationship existed between Davie and Flowers.[24] Davie had control over the actions of players like Nahje Flowers through the implementation of programs that were allegedly designed to prevent players from sustaining concussions and to protect the physical and mental health of players who did sustain concussions.[25] However, Davie breached his duty to protect the safety of Nahje Flowers and to ensure that a proper program was in place to ensure proper treatment of his players.[26]

After Nahje Flowers suffered concussions while playing football as a UNM student athlete, Davie was on notice and knew or should have known that he was susceptible to the risk of mental health side effects and the risk of suicide.[27] Despite the knowledge of Flowers' increased risk of suicide, Davie committed extensive failures in the implementation, promulgation, and requirement

---

[24] SAC ¶¶ 121-127, 129, 130.
[25] *Id.*
[26] *Id.*
[27] *Id.*

of appropriate and up-to-date guidelines regarding the treatment of concussions and treatment of the latent effects of concussions.[28] As a result of these failures, Nahje Flowers was forced to play with post-concussion symptoms, against doctor's orders, and without adequate monitoring or intervention from Davie.[29] Thus, Davie's failures led to the inducement of a mental illness in Nahje at the time of his death because he was suffering from the severe effects of concussions and brain trauma.[30] His actions were unintended, and he was bereft of reason in the actions he took to end his life.[31] Therefore, Nahje Flowers' suicide was not an independent intervening cause.

To the extent Defendants disagree or submit conflicting evidence on this issue, the issue remains a question of fact for the jury to decide rather than an issue for this Court to decide as a matter of law.

Based on the arguments laid forth in this Response, Plaintiffs plausibly pled its state law claims against Defendant Davie, and thus, Plaintiffs respectfully request that the Court deny his Motion to Dismiss.

## <u>CONCLUSION</u>

Plaintiffs request that the Court DENY Defendant Robert Davie's Motions to Dismiss, and grant such other and further relief as the Court deems proper.

Respectfully Submitted,

**STOUT & STOUT LAWYERS**

By:  */s/ Mark Stout*
Mark Stout
New Mexico Bar No. 2603
mark@stoutnm.com
Drew Stout
New Mexico Bar No. 149545

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*

drew@stoutnm.com
3319A N. Grimes
Hobbs, NM 88240
Telephone No.: (575) 393-1555

**HILLIARD MARTINEZ GONZALES LLP**
Robert C. Hilliard
Texas State Bar No. 09677700
bobh@hmglawfirm.com
T. Christopher Pinedo
Texas State Bar No. 00788935
cpinedo@hmglawfirm.com
Marion M. Reilly
Texas State Bar No. 24079195
marion@hmglawfirm.com
John C. Duff
Texas State Bar No. 24086979
jduff@hmglawfirm.com
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
(361) 882-1612 Telephone
hmgservice@hmglawfirm.com
*service to this email address only

**BEN CRUMP LAW, PLLC**
Ben Crump
Florida State Bar No. 72583
court@bencrump.com
122 S. Calhoun Street
Tallahassee, FL  32301
Telephone No.: (850) 224-2020

**EQUAL RIGHTS LAW GROUP**
Mika Hilaire
California State Bar No. 212263
mika@equalrightslawgroup.com
15233 Ventura Boulevard, Suite 420
Sherman Oaks, CA 91403

**PINTAS & MULLINS LAW FIRM**
Laura Mullins
Illinois State Bar. No. 6229541
laura@pintas.com
368 W. Huron Street, Suite 100
Chicago, IL 60654
**ATTORNEYS FOR PLAINTIFFS**

16

## <u>CERTIFICATE OF SERVICE</u>

I, Mark Stout, hereby certify that on the 12th day of March, 2021, I caused the foregoing document to be served and filed electronically through CM/ECF, the United States District Court's File and Service System, which causes all parties and/or counsel of record to be served by electronic means.


*/s/ Mark Stout*
Mark Stout